# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| STACY P. ELLIS | § § § | |
| V. | § § | CASE NO. 4:12CV455 |
| | § | (Judge Mazzant) |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | § § § | |

## MEMORADUM OPINION

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for a judicial review of a final decision of the Commissioner denying her claim for disability insurance benefits and supplemental security income. After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be affirmed.

## HISTORY OF THE CASE

Plaintiff filed the current application for disability insurance benefits under Title II, and Supplemental Security Income under Title XVI of the Social Security Act on January 22, 2010 (TR 29). She alleges disability since July 1, 2008. Respecting Title II benefits, her date last insured is September 30, 2008. Both applications were denied initially by notice and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). Ten days before the hearing, Plaintiff retained counsel. After holding a hearing on March 2, 2011, the ALJ denied benefits on April 1, 2011 (TR 26-39). Plaintiff requested a review of the ALJ's decision by the Appeals Council; it denied review on May 18, 2012 (TR 6-11).

## STATEMENT OF THE FACTS

Plaintiff was born on December 29, 1974, making her a 33-year-old female at the time of her alleged onset date of July 1, 2008. For purposes of disability evaluation she is therefore considered a "younger person." 20 C.F.R. § 404.1563(c). During her working years Plaintiff worked in a variety of places: she served in the Texas Army National Guard from December 1993 through August 1994; she also was a home health provider, dishwasher, factory worker, child care provider, janitor, and shelf stocker. Additionally, Plaintiff began college coursework in 1995, and graduated in 2005 with a bachelor's degree in Sociology. Since her graduation, she has not been employed anywhere that requires her collegiate training (TR 477).

Plaintiff now alleges disability for anxiety, depression, muscle weakness, lumbago, polyneuropathy, radiculopathy, emotional lability, muscle spasms, difficulty walking, myalgia, fibromyalgia, rheumatoid arthritis, degenerative disc disease, hypertension, irritable bowel syndrome, endometriosis, recurrent urinary tract infections, obsessive compulsive disorder, attention deficit disorder, panic disorder with agoraphobia, and generalized anxiety disorder, chronic pancreatitis, herniated discs of the back, and paresthesia (TR 30).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The Administrative Law Judge found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date (TR 30). He then found that Plaintiff's severe impairments were degenerative disc disease of the cervical spine and anxiety, and noted that several other alleged disabilities were unsupported by the medical records available to him. At step three he found that Plaintiff's disabilities as a whole did not meet or equal a listing, thereby concluding she was not presumptively disabled. The ALJ then considered whether she had the residual functional capacity to return to past work, or had the ability to perform other work. After a detailed discussion of Plaintiff's medical records, he concluded that Plaintiff had the residual

functional capacity to perform light work "limited by the need for simple, routine, repetitive tasks" and could return to past relevant work as a hand packager (TR 34). As defined by regulation, light work includes "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls" as well as not lifting any more than 20 pounds. 20 C.F.R. § 404.1567(b). Contradictions in Plaintiff's testimony led the ALJ to conclude her testimony was not credible (TR 35). The ALJ found that Plaintiff's impairments did not prevent her from performing her past relevant work (TR 35).

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether (1) there is substantial evidence in the record to support the Commissioner's factual findings and (2) whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir.1985); *Jones v. Heckler,* 702 F.2d 616, 620 (5th Cir.1983).. This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir.1995), and conflicts in the evidence are resolved by the Commissioner. *Carry v. Heckler,* 750 F.2d 479, 482 (5th Cir.1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook,,*750 F.2d at 393.

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (2012). First, a claimant who at the time of his disability claim is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f); 42 U.S.C. § 1382(a).

## ANALYSIS

Plaintiff raises only one issue in this appeal: whether additional medical evidence submitted to the Appeals Council diluted the record upon which the ALJ's decision was based. However, as found within in her argument on this sole issue, she faults Commissioner for a failure to provide a detailed analysis rejecting the opinions of her treating physicians as required by *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000) and also faults Commissioner for a lack of severity analysis as required by *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).

When Plaintiff petitioned the Appeals Council for review of the ALJ's decision, she, through her former legal counsel, submitted 175 pages of medical evidence from current and

former primary treating physicians, Dr. Ramon Cruz and Dr. Margarita Fallena. A few additional records from neurologist Dr. Mahmood Akhavi were included as well, whom Plaintiff was referred to by Dr. Fallena. Plaintiff contends that these records contradict the ALJ's findings that Dr. Cruz was not a treating physician whose opinion the ALJ rejected. The Commissioner responds that these records support its decision and undermine Dr. Cruz's residual functional capacity findings.

When a district court reviews a disability claim, it must consider the entire administrative record, which includes any action the Appeals Council has taken. *See Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005). When the Appeals Council receives a request for review it "may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to an administrative law judge." 20 C.F.R. § 404.967. When the Appeals Council declines to grant a request for review, the ALJ's decision becomes the final decision of the Commissioner. *Higginbotham*, 405 F.3d at 337. "The Appeals Council should grant review 'if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Henderson v. Astrue*, No. 3:10-CV-0589-D, 2011 WL 540286, at*5 (N.D. Tex Feb. 15, 2011) (citing 20 C.F.R. § 404.970(b)). Regardless of the outcome at the Appeals Council, claimants are permitted to send additional evidence in connection with the request for review as long as it is relevant to the time periods where disability is alleged. *See* 20 C.F.R. § 404.970(b). New evidence received by the Appeals Council must be considered with a request for review. *Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 336 (N.D. Tex 2003); *see also Carry*, 750 F.2d at 486. When evaluating that evidence, the Appeals Council must follow the same rules that the ALJ follows. 20 C.F.R. § 404.1527(e)(3).

In the instant action the Appeals Council acknowledged receipt of new evidence and documented it accordingly (TR 6-7, 10-11). Despite this new evidence, it denied review of this claim, stating that it "found no reason under [its] rules to review the Administrative Law Judge's decision." (TR 6). The Appeals Council further stated, "we considered the reasons you disagree with the decision [of the ALJ] and the additional evidence listed on the enclosed Order of Appeals Council." (TR 6, 10-11). As will be discussed below, substantial evidence supports this decision.

The medical records submitted to the Appeals Council show that as of April 2011, Plaintiff had "sacroiliac joints [which] are degenerated with some iliac sided subcondral lucency possibly subcondral cyst or subchondral erosion." That report also stated that "[n]o clear cortical break is identified" (TR 689). A "mild femoral head-neck offset at the proximal femur, right greater than left, suggesting femoroacetabular impingement" was also recorded. A previous CT Scan dated April 30, 2010, revealed "some small cysts or follicles in the right ovary," but the left ovary was "unremarkable" (TR 641). X-rays performed on April 1, 2010, revealed a "minimal perihilar/perbronchial pattern." The impression was minimal central bronchitis, without focal infiltrate (TR 649). Other objective facts show that Plaintiff showed elevated ESR on two separate occasions discovered by lab testing (TR 658). An MRI taken on August 4, 2009, revealed a "2 mm disc bulge which minimally crowds the nerve roots within the lateral recess." The impression stated, "[m]inimal discogenic changes without discrete impingement" (TR 659). The commonality in nearly all these tests is the fact that the abnormal conditions are reported to be of minimal impact.

The records submitted to the Appeals Council from the treating physicians also indicate that on four visits Dr. Cruz specifically stated that Plaintiff was "not discharged to work" based

on his medical assessment of her. The dates of those four visits were respectively: July 23, 2009, April 26, 2010, September 29, 2010, and October 14, 2010 (TR 541, 577, 612, 621). No other records had an explicit prohibition to work, and the inference that she was not to work from July 23, 2009, until October 14, 2010, cannot be made after reviewing all records. Additionally, on November 10, 2010, Dr. Cruz noted that despite difficulty in walking, attention-deficit hyperactivity disorder, depression and other impairments, Plaintiff was "discharged to work" (TR 628). On some visits Dr. Cruz noted difficulty walking: September 16, 2010; September 29, 2010; October 14, 2010; October 21, 2010; and November 10, 2010 (TR 608, 612, 621, 624, 628). On other visits he noted no difficulty: July 23, 2009; August 7, 2009; October 30, 2009; and April 26, 2010 (TR 544, 548, 555, 576). Likewise, some encounters with Dr. Cruz show that Plaintiff appeared "chronically ill," while other times Plaintiff appeared "acutely ill." For example, on the first recorded visit on July 23, 2009, Plaintiff was "chronically ill," yet the very next visit, less than one month later on August 7, 2009, Plaintiff was only "acutely ill" (TR 543, 547). Dr. Cruz recorded "chronically ill" again on April 26, 2010, and two days later on April 28, 2010, Plaintiff again appeared "acutely ill" (TR 576, 580).

It is true, as Plaintiff argues, that Dr. Cruz has treated Plaintiff for a plethora of problems; however, it must also be noted that not all those symptoms appear in his assessments on a consistent basis. For example, Dr. Cruz records fibromyalgia for the first time on September 16, 2010 (TR 608). An assessment of fibromyalgia appears on every subsequent visit until November 10, 2010, where he did not assess fibromyalgia (TR 628). The next recorded visit from Dr. Cruz was months later, on March 1, 2011 (TR 629). He does assess fibromyalgia on that visit, yet records that her "strength was normal" and "no limping was observed" (TR 631).

Dr. Akhavi does confirm that Plaintiff has autoimmune disease and fibromyalgia. He states of her past history, "[r]emarkable for HBP, hysterectomy, ADD, depression, anxiety, endometriosis, pancreatitis, fibromyalgia" (TR 691-692). He also notes a "weakness of hand grips [and] proximal weakness of lower extremities" (TR 693). Yet he also reports "[m]uscle tone and muscle volume are normal" (TR 693). Moreover, he opined that the Plaintiff had "[m]ultiple subjective symptom complex" (TR 691). He further noted, "[s]he over-reacts to deep tendon testing. For example, when I was checking her knee reflexes she jumped and almost fell from the exam table" (TR 693). This is consistent with the Consultative Psychological Evaluation performed by Randall Rattan, Ph.D., who observed "mild to moderate exaggerations of symptoms," on which the Commissioner relied in making his decision (TR 32).

Substantial evidence likewise supports the Commissioner's discrediting Plaintiff's testimony. Plaintiff states that she can only sit for approximately thirty minutes, but occasionally can sit during a two-and-a-half-hour hour drive to visit family (TR 56, 69). Likewise Plaintiff testified that if she lifts something heavy she gets stuck in a certain position, but an MRI taken on April 8, 2011—one week after the ALJ denied benefits—reports "no advanced disc or facet joint disease . . . . or abnormal calcifications." (TR 58, 688).

As mentioned above, Plaintiff has a bachelor's degree in Sociology, is currently thirty-eight years old, and has worked as a home health provider, dishwasher, factory worker, child care provider, janitor, shelf stocker, and in the Texas National Guard. Just one month before Plaintiff filed this application—her sixth application—for disability benefits, VIP Vocational Services opined in a detailed report that Plaintiff has the physical ability to perform sedentary to light work (TR 225-236). That report even listed available jobs in the area where Plaintiff could

apply to work. As VIP Vocational Services found, the ALJ likewise found the Plaintiff could do light work (TR 34).

Given the inconsistencies mentioned above, and the deference owed the Commissioner in this appeal, the Court therefore concludes that the Appeals Council did not commit error in upholding the ALJ's decision, even with the records from the Plaintiff's treating physicians. The Court finds no basis for disturbing the Commissioner's findings that Plaintiff can perform light work.

Within the sole issue presented to this Court, Plaintiff also argues that the Appeals Council did not perform a detailed analysis as required by 20 C.F.R. §§ 404.1527(d) and 416.927(d). Plaintiff argues that the Appeals Council did not give controlling weight to the opinions of her treating physicians and upheld the ALJ's decision, which assumed Dr. Cruz was not a treating physician, when the records submitted to the Appeals Council establish Dr. Cruz was a treating physician. In support of the argument, she cites *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), which requires the Commissioner to perform this analysis when it rejects the treating opinions of a physician. She also cites other Fifth Circuit precedent that requires a treating physician's opinion be given great weight in a disability determination. *See, e.g., Leggett v. Chater*, 67 F.3d 558 (5th Cir. 1995). The Commissioner concedes that the records submitted to the Appeals Council do establish that Dr. Cruz was a treating physician from July 2009 through April 2011, but argues that Plaintiff cannot establish prejudice for the lack of this analysis. He further argues that Plaintiff's current counsel should not benefit from either a lack of due-diligence or former counsel's legal strategy in withholding records from the ALJ but submitting them to the Appeals Council. Because the Court agrees with the Commissioner that prejudice is not established, it will only address that argument. As set forth above, the evidence

supplied to the Appeals Council does not erode the ALJ's findings, and prejudice is not established.

*Newton* states, as relevant to Plaintiff's argument, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d at 453 (emphasis in original). *Newton* also permits the Commissioner, for good cause, to discount a treating physician's records "relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

Addressing similar arguments to that which Plaintiff makes, the Fifth Circuit stated, "[w]here the resulting disability determination remains unchanged, even if some of the reasoning underlying that decision is erroneous, no substantial rights have been affected." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009). Furthermore, when a district court reviews a case where the Commissioner has denied benefits and the Appeals Council does not provide a detailed analysis of its support of the ALJ's decision, the proper standard is to "review the record as a whole, including new evidence, to determine whether the Commissioner's findings are still supported by substantial evidence." *Higginbotham v. Barnhart,* 163 F. App'x 279, 281 (5th Cir. 2006) (per curiam) (citing *Wilkins v. Sec'y Dep't of Health and Human Serv*., 953 F.2d 93, 96 (4th Cir. 1991)); *see also McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at*6 (W.D. La. August 28, 2009) ("[E]vidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision."); *Metcalf ex rel. ANM v. U.S. Com'r Social Sec. Admin.*, No. 08-cv-

1812, 2009 WL 5174368, at *5 (W.D. La. 2009) ("It is not appropriate to automatically reverse merely because the Appeals Council failed to explain the weight afforded evidence first presented to it.")  Moreover, *Qualls* states, "[t]he procedural improprieties alleged by [Plaintiff] will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Qualls*, 339 F. App'x at 464 (citing *Morris v. Bowen*, 864 F.2d 333,335 (5th Cir. 1988)).  Additionally, Plaintiff gives *Newton* an overly broad reading.  The Fifth Circuit narrowed its holding to cases where "the ALJ summarily reject[s] the opinions of [a claimant's] treating physician based solely on the testimony of a non-specialty medical expert who had not examined the claimant."  *Newton*, 209 F.3d at 458; *accord. Qualls*, 339 F. App'x at 466-67.  In light of the foregoing, the Court concludes that the lack of the analysis required by 20 C.F.R. §§ 404.1527(d) and 416.927(d) to reject the opinion of a treating physician was harmless error as the Commissioner's decision is supported by substantial evidence.

Plaintiff's last argument is that the Commissioner committed prejudicial error by not applying the proper severity standard to her case, as is mandated by Fifth Circuit precedent, citing S*tone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) in support of this argument.  She argues that the evidence submitted to the Appeals Council directly contradicts some of the ALJ's findings, such as the diagnosis of fibromyalgia and arthritic pain from arthralgia in her shoulder. The Commissioner responds, stating that even if fibromyalgia were considered severe at step two, "this fact may not have affected the outcome of the case" due to the Fifth Circuit's *de minimus* definition of severe.  Commissioner likewise draws support from *Stone* in support of this argument.  *Stone*, 752 F.2d at 1101.

As relevant to Plaintiff's argument, *Stone* states:

11

> [W]e will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used. Unless the correct standard is used, the claim must be remanded to the [Commissioner] for reconsideration.

*Id.* at 1106. As relevant to the Commissioner's contention, *Stone* states:

> We therefore construe [ ] the current regulation as setting the following standard in determining whether a claimant's impairment is severe: "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."

*Id.* at 1101 (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) (further citation omitted)). The year after *Stone* was decided the Fifth Circuit further explained its scope: "*Stone* does not require a wholesale remand of all severity cases. A case will not be remanded simply because the ALJ did not use 'magic words' . . . . We must read the opinion of the ALJ carefully to ensure [the ALJ] used the [correct] 'slight impairment' standard[.]" *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986); *see also Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (holding that it is harmless error if an ALJ does not cite to *Stone* in the severity analysis where "substantial evidence supports the finding of . . . non-severity.")

In the instant case the ALJ stated the severity standard as "one which would have more than a slight effect on her ability to engage in those basic work-related activities set forth in 20 C.F.R. §§ 404.1521(b) and 416.921(b)" (TR 30). While not referring explicitly to *Stone*, the ALJ's definition of "severe" is in substantial conformity with its "express . . . construction." *Stone*, 752 F.2d at 1106. In light of the above-mentioned inconsistencies in the record, the Appeals Council did not err by failing to remand the case to the ALJ to apply *Stone*, as the ALJ would have come to the same result even had he made an explicit reference to *Stone*.

Pursuant to the foregoing, it is ORDERED that the decision of the Commissioner is AFFIRMED.

**SIGNED this 25th day of March, 2014.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE